Robert R. Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore Maya (SBN 223242)
tmaya@ahdootwolfson.com
Christopher Stiner (SBN 276033)
cstiner@ahdootwolfson.com
Deborah De Villa (SBN 312564)
ddevilla@ahdootwolfson.com
**AHDOOT & WOLFSON, P.C.**
2600 W. Olive Avenue, Suite 500
Burbank, California 91505-4521
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

*Attorneys for Plaintiff and the Putative Classes*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARIYA THONGSAWANG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS LLC, ONSTAR, LLC, and LEXISNEXIS RISK SOLUTIONS INC.,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Jariya Thongsawang ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to her and on information and belief as to all other matters, by and through undersigned counsel, hereby brings this Class Action Complaint against Defendants General Motors LLC ("GM"), OnStar, LLC ("OnStar"), and LexisNexis Risk Solutions Inc. ("LexisNexis" and, collectively with GM and OnStar, "Defendants").

## NATURE OF THE ACTION

1.      Plaintiff brings this action on behalf of herself and on behalf of all similarly situated persons ("Class Members") in the United States who purchased or leased a vehicle from GM and had their location data provided to LexisNexis.

2.      This action is brought to remedy violations of law in connection with Defendants' unlawful collection and dissemination of Plaintiff's and Class Members' location data through the telematics system in their vehicles. The allegations herein are based on personal knowledge as to Plaintiff's own experiences and are made as to other matters based on an investigation by counsel, including analysis of publicly available information.

## JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d), because this matter was brought as a class action under Fed. R. Civ. P. 23, at least one proposed Class Member is of diverse citizenship from Defendants, the proposed Class includes more than 100 members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000), excluding interest and costs.

4.      The Court has personal jurisdiction over Defendants and venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District. Plaintiff resides in this District and purchased her vehicle in this District. Defendant GM has marketed, advertised, sold, and leased vehicles within this District. Plaintiff is informed and believes that Defendants OnStar and LexisNexis marketed, advertised, and sold their services within this District.

## PARTIES

5.    **Plaintiff Jariya Thongsawang** resides in Laguna Hills, California. On or about January 5, 2021, Plaintiff Thongsawang purchased a 2021 Chevy Traverse from Simpson Chevrolet of Garden Grove. At the time of purchase, she signed up for the complimentary OnStar service. At no time was she appropriately alerted to the fact that GM would collect and share her location data through the OnStar service.

6.    Plaintiff Thongsawang is informed and believes that her data, including location data, was provided to third parties, including but not limited to her auto insurance provider. This has led Plaintiff Thongsawang to pay more than she otherwise would have for her auto insurance.

7.    **Defendant General Motors LLC** ("GM") is a United States public corporation headquartered in Detroit, Michigan, and incorporated under the laws of Delaware. GM is a multinational automotive manufacturer most known for owning and manufacturing four automobile brands: Chevrolet, GMC, Cadillac, and Buick.

8.    **Defendant OnStar, LLC** ("OnStar") is a United States public corporation headquartered in Detroit, Michigan, and incorporated under the laws of Delaware. OnStar Corporation is a subsidiary of General Motors that provides subscription-based communications, in-vehicle security, emergency services, turn-by-turn navigation, and remote diagnostics systems throughout the United States.

9.    **Defendant LexisNexis Risk Solutions Inc.** ("LexisNexis") is a United States public corporation headquartered in Alpharetta, Georgia, and incorporated under the laws of Delaware. LexisNexis Risk Solutions is a global data and analytics company that provides data and technology services, analytics, predictive insights, and fraud prevention for a wide range of industries.

## FACTUAL BACKGROUND

### *Vehicle Owner Tracking*

10.    Automobiles hold a special place in American culture as a symbol of freedom and autonomy, a ticket to the open road. However, as explained in a guide published by

- 2 -

the non-profit Mozilla Foundation, "[m]odern cars are surveillance-machines on wheels souped-up with sensors, radars, cameras, telematics, and apps that can detect everything we do inside -- even where and when we do it. Whether that means singing at the top of your lungs, engaging in hanky panky in the back seat, or driving to a domestic violence shelter, cars are an increasingly unsafe place to be yourself."[1]

11.　Regulators around the world have raised concerns about the volume of personal data collected by vehicles that increasingly gather, store, and transmit information for entertainment, performance, and safety purposes. Last year, California nonprofit Consumer Watchdog told the state's regulator that "car data is the new gold rush of the auto industry. . . . Automakers and third-party companies know where we drive, what we buy, eat, our texts. A whole consumer profile is created with this information to essentially sell you things."[2]

12.　Recently, the New York Times reported that car manufacturers are tracking drivers' behavior through internet-connected vehicles, and sharing it with data brokers such as LexisNexis and Verisk.[3] The New York Times further explained that a number of car manufacturers have started offering optional features in their connected-car apps that rate people's driving. Drivers likely do not realize that, if they turn on these features, the car companies then give information about how they drive to data brokers like LexisNexis and Verisk. These data brokers in turn create "consumer disclosure reports" on individuals, which they sell to insurance companies providing insurance to those individuals. The consumer disclosure reports show the length of trips and driving behavior, such as "hard braking," "hard accelerating" and speeding. Insurance companies can use those reports to

---

[1] https://foundation.mozilla.org/en/privacynotincluded/articles/after-researching-cars-and-privacy-heres-what-keeps-us-up-at-night/

[2] https://www.reuters.com/business/autos-transportation/california-agency-probes-automakers-data-privacy-practices-2023-07-31/

[3] *Automakers Are Sharing Consumers' Driving Behavior With Insurance Companies*, New York Times available at https://www.nytimes.com/2024/03/11/technology/carmakers-driver-tracking-insurance.html

CLASS ACTION COMPLAINT

1  assess the risk of a current or potential customer, and adjust rates or refuse coverage based
2  on the findings.

3      13.    For example, GM offers OnStar Smart Driver for its Chevrolet, Buick, GMC,
4  and Cadillac brand vehicles. Kia, Mitsubishi, Hyundai, and both Honda and its Acura
5  luxury arm all offer similar driver coaching systems as well. All of these programs collect
6  information about a driver's mileage, speed, braking, and acceleration, which are then
7  shared with LexisNexis or Verisk.

8      14.    The *New York Times* highlighted the case of Kenn Dahl, the driver of a leased
9  Chevrolet Bolt, who learned that he and his wife's driving habits were being tracked when
10 an insurance agent told him in 2022 that his LexisNexis report was a factor behind his
11 insurance premium jumping by 21%. While many automakers and data brokers claim that
12 they do not collect information without vehicle owner's consent, the manner in which
13 consent is obtained is often suspect. Consumers' consent, like Kenn Dahl's, is frequently
14 achieved by getting them to sign off on disclosures, with no specific explanation of the data
15 collection in the fine print.

16     15.    Following reports, Senator Ed Markey, a Democrat from Massachusetts, sent
17 letters to 14 automakers urging them to implement stronger privacy policies for consumers.
18 Last month, dissatisfied by automakers' evasive answers, Sen. Markey asked the Federal
19 Trade Commission (FTC) to investigate car manufacturers' data collection practices. Sen.
20 Markey wrote:

21         "With new advances in vehicle technology and services, automakers have
22         been vacuuming up huge amounts of data on drivers, passengers, and even
23         individuals outside the vehicle. Based on public reporting and responses to
24         my own inquiries into these practices, automakers face few, if any, limitations
25         on the collection, use, and disclosure of this data. Consumers are often left in
26         the dark. I therefore urge the FTC to investigate the automakers' data practices
27         and take all necessary actions to protect the privacy of all road users."

28

16.     Sen. Markey continued to explain that in their responses, the automakers largely failed to answer important questions about whether they use the data for their own commercial benefit, whether a consumer loses functionality by refusing to consent to the data collection, and whether the manufacturers have suffered a cyberattack in recent months. In addition, 12 of the 14 automakers wrote that they provide data to law enforcement, with most doing so only in response to a subpoena, warrant, or other legal order.

### *General Motors Sends Location Data to LexisNexis*

17.     Through its OnStar Corporation subsidiary, GM provides subscription-based communications, in-vehicle security, emergency services, turn-by-turn navigation, and remote diagnostics mechanisms utilizing vehicles' onboard telematics system that GM markets under the "OnStar" brand.

18.     Each OnStar system installed as original equipment can gather data from both the onboard diagnostics ("OBD-II") system and built-in GPS functionality. OnStar systems also use CDMA cellular technology for voice communications and data transmissions. OnStar can transmit GPS data using the CDMA connection to the central OnStar system to provide turn-by-turn directions. It can also use the same GPS data for emergency services functionality, allowing OnStar to summon help in an accident. OnStar can also transmit data from the OBD-II system. This feature allows OnStar to track the vehicle's mileage for insurance purposes, provide vehicle health reports, and determine if there has been an accident. The OBD-II system notifies the OnStar call center when it determines that a vehicle's airbags have gone off.

19.     One service utilizing this technology is OnStar Smart Driver. This optional service provides customers with information about their driving behavior to help them maximize their vehicle's overall performance, reduce vehicle wear and tear, and encourage safer driving. GM promotes this service by offering customers who enroll in OnStar Smart Driver the ability to earn achievements, get valuable feedback with each trip, and access their driving data from their myBuick, myCadillac, my Chevrolet, or myGMC mobile

app(s). There is no charge for customers to enroll in OnStar Smart Driver; it comes as part of the suite of OnStar services standard on most model year 2015 and newer Chevrolet, Buick, GMC, and Cadillac vehicles.

20. Customers can enroll in OnStar Smart Driver at the time of vehicle purchase through their dealer, or at a later date, using either their myBuick, myChevrolet, myGMC or myCadillac mobile app(s), or by visiting their vehicle brand website: https://my.buick.com, https://my.chevrolet.com, https://my.gmc.com, or https://my.cadillac.com.

21. OnStar provides a webpage of answers to frequently asked questions, including information on how they treat the consumer data that their system collects. For example, as of September 25, 2023, OnStar has posted and answered the following questions[4]:

— **Will other OnStar Members be able to see Members' information?**

No. Members' Smart Driver information will not be visible to other OnStar members. Members will be able to see how they compare against an anonymous aggregate of participating OnStar Members.

— **How are my scores calculated?**

After your trip is complete, we look at the factors above and apply a proprietary scoring algorithm used to assess driving behavior. The scores by trip can vary widely. For example, a longer trip with one mild hard brake would score much better than a very short trip with a more abrupt hard brake. Daily, weekly and monthly scores use the same factors, but use somewhat different scoring algorithms. Daily scores consider things that trip scores don't, like how many trips the driver took and miles he or she drove over the entire day. Trip scores may vary. Monthly scores are the most reliable indicators of how drivers are doing on their driving behaviors.

— **How does OnStar protect Members' personally identifiable information from being shared?**

OnStar takes the security of its Members' data very seriously. We use technical, administrative and physical safeguards designed to help protect Members' information from loss, misuse and unauthorized access, disclosure, alteration, destruction or theft. OnStar doesn't share personally identifiable information with an insurance company without your express consent.

---

[4] Wayback Machine, September 25, 2023, available at: https://web.archive.org/web/20230925021817/https://www.onstar.com/support/faq/smart-driver

CLASS ACTION COMPLAINT

22.     Nowhere in these frequently asked questions did OnStar reveal that it was providing extensive consumer data to LexisNexis, who was in turn sending it to auto insurers.

23.     Lexis Nexis advertises on its website that it hosts data from over 10 million vehicles, 252 billion driving miles and/or the equivalent of 19.5 million years of vehicle logging.[5] As of 2022, LexisNexis Risk Solutions had a relationship with automotive manufacturers representing more than 60% of the market and was integrated with data available for insurers.

24.     "Insurance carriers told us they believe they need to invest in telematics data now or run the risk of being left behind the competition within three to four years' time, and a significant majority of those carriers believe that a telematics exchange can deliver scalability, providing real-time data that informs on driving behavior," said Adam Hudson, vice president and general manager of U.S. Connected Car at LexisNexis Risk Solutions.[6] "This is why 42% of the U.S. auto insurance market is contracted or currently contracting to access our Exchange solutions, including 5 of the top 10 insurers. We won't stop here, as there are industry challenges to solve and a growing, evolving exchange data set can be used in a variety of telematics solutions beyond UBI, while also creating the opportunity to improve the overall vehicle ownership experience."[7]

25.     One reason insurers feel the necessity to gather telematics information is the recent increase in insurance costs. A recent analysis by the U.S. Bureau of Labor Statistics found insurance costs have risen 71% in the last decade and 18% in just the first half of last year.  Higher repair costs are partly to blame. Today's cars are complex devices full of expensive electronics, often in vulnerable places. Parking sensors, blind-spot monitors, and

---

[5] https://risk.lexisnexis.com/about-us/press-room/press-release/20220628-telematics-exchange-5-year-anniversary

[6] *Id.*

[7] *Id.*

CLASS ACTION COMPLAINT

automatic emergency braking systems all require sensors placed on the exterior of a car. Even a minor accident can require replacing thousands of dollars' worth of electronics.

26.     As a result of Defendants' misconduct, Plaintiff and the other Class Members were each injured on account of their vehicle location being shared with third parties, including, but not limited to, the insurance companies that provide them insurance and/or other insurance companies where Plaintiff and the other Class Members applied for insurance. Accordingly, the vehicles purchased by Plaintiff and the other Class Members were fundamentally different from what they believed they were purchasing, less valuable than was represented, and less valuable than what they actually received.

27.     To date, Plaintiff's and Class Members' data is still in the possession of Defendants and unknown third parties. As such, and without the benefit of discovery, it is for all practical purposes impossible to know at this time whether a remedy at law or in equity will provide the appropriate full relief for Plaintiff and the other Class Members. As a result, Plaintiff, at this stage of the litigation, seeks both restitution and a remedy at law, where the claims so permit. Further, Plaintiff seeks an injunction enjoining Defendants and their agents, servants, and employees, and all persons acting under, in concert with, or for them, from selling or otherwise disseminating Plaintiff's and Class Members' data, and requiring that data's destruction.

## TOLLING OF STATUTES OF LIMITATIONS

28.     Defendants had exclusive knowledge of their activity to collect and utilize Plaintiff's and Class Members' data and knew their activity would not be discovered by Plaintiff and Class Members.

29.     Thus, any applicable statute of limitations has been tolled by Defendants' actions and Defendants are estopped from pleading the statute of limitations because they failed to disclose the facts they were obligated to disclose concerning their activity.

## CLASS ALLEGATIONS

30.     This action is brought as a class action pursuant to Fed. R. Civ. P. 23(a)(b)(2), and (b)(3) on behalf of a Class defined as follows:

**Class**

All persons and entities in the United States whose vehicle driving data was collected, stored, distributed, and/or sold by Defendants.

31.     In the alternative, Plaintiff seeks certification of the following class:

**California Class**

All persons and entities in the State of California whose vehicle driving data was collected, stored, distributed, and/or sold by Defendants.

32.     Excluded from the Class are: (i) Defendants and their officers and directors, agents, affiliates, subsidiaries, authorized distributors and dealers, (ii) all Class members who timely and validly request exclusion from the Class, and (iii) the Judge presiding over this action.

33.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

34.     **Numerosity:** The members of the Class are so numerous that joinder of all Class Members in a single proceeding would be impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that tens of thousands of vehicle owners have had their location data collected, stored, distributed, and/or sold by Defendants.

35.     **Existence/Predominance of Common Questions of Fact and Law:** Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

          a.     whether Defendants engaged in the conduct alleged herein;

b.   whether Defendants omitted and misrepresented material facts to purchasers and lessees of vehicles;

c.   whether Defendants' omissions and misrepresentations regarding the vehicles were likely to mislead a reasonable consumer;

d.   whether Plaintiff's and the other Class Members' vehicles were worth less than as represented as a result of the conduct alleged herein;

e.   whether Plaintiff and the other Class Members have been damaged and, if so, the extent of such damages; and

f.   whether Plaintiff and the other Class Members are entitled to equitable relief, including but not limited to, restitution and injunctive relief.

36.   Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

37.   **Typicality:** Plaintiff's claims are typical of the claims of the other Class Members because, among other things, Plaintiff and the other Class Members were injured through the substantially uniform misconduct described above. Like Plaintiff, Class Members also purchased or leased a vehicle that collected, stored, distributed, and/or sold data about the vehicle to third parties. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class members, and no defense is available to Defendants that is unique to Plaintiff. The same events giving rise to Plaintiff's claims for relief are identical to those giving rise to the claims of all Class Members. Plaintiff and all Class Members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendants' wrongful conduct in collecting, storing, distributing, and/or selling their location data.

38.   **Adequacy:** Plaintiff is an adequate Class representative because she will fairly represent the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions, including consumer fraud and privacy class action cases. Plaintiff and her counsel are committed to prosecuting this action

vigorously on behalf of the Class they represent and have the resources to do so. Neither Plaintiff nor her counsel have interests adverse or antagonistic to those of the Class.

39.   **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other detriment suffered by Plaintiff and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class Members to individually seek redress for Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system should not be required to undertake such an unnecessary burden. Individualized litigation would also create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

40.   Upon information and belief, members of the Class can be readily identified and notified based upon, *inter alia*, the records (including databases, e-mails, dealership records and files, etc.) Defendants maintain regarding Plaintiff's and the Class Members' vehicles and location data.

**<u>CAUSES OF ACTION</u>**
**COUNT I**
**Violations of CIPA, Cal. Pen. Code §§ 630, *et seq.***
**(On Behalf of Plaintiff and the California Class)**

41.   Plaintiff repeats and realleges all preceding paragraphs contained herein.

42.   Cal. Pen. Code § 630 provides that "[t]he Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communication and that the invasion of privacy resulting from the continual and increasing use of such devices and

techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."

43.     Defendants' acts and practices complained of herein, engaged in for purposes of storing and tracking indefinitely the location information of car owners and thus determining their movements over time (and all other inferences derivable therefrom), without their consent violated and continues to violate Cal. Pen. Code § 637.7.

44.     Cal. Pen. Code § 637.7(a) prohibits the use of an electronic tracking device to determine the location or movement of a person. As used in Cal. Pen. Code § 637.7, "electronic tracking device" means "any device attached to a vehicle or other movable thing that reveals its location or movement by the transmission of electronic signals." Cal. Pen. Code § 637.7(d).

45.     In direct violation of this prohibition, and without the consent of Plaintiff or Class Members, Defendants continued to record, store, and use the location and movement of Plaintiff's and Class Members' vehicles and provide that information to third parties.

46.     As described herein, Defendants utilized "electronic tracking devices" as defined by Cal. Pen. Code § 637.7(d), in that Defendants used "devices"—including the vehicles' own telematics systems, including, but not limited to, onboard diagnostics systems and built-in GPS functionality, which are mechanical or electronic equipment— attached to, and located within, each Class Member's vehicle (a "movable thing") to "reveal[] its location or movement by the transmission of electronic signals."

47.     Defendants unlawfully used those electronic tracking devices "to determine the location or movement of a person"—namely, Plaintiff and Class Members. Defendants engaged in such storage and tracking of each Class Member's movement after Defendants had affirmatively (but falsely) misrepresented that they would not store and track each Class Member's movement and transmit to third parties or omitted such information altogether.

48.     As a result of Defendants' violations of Cal. Pen. Code § 637.7, and pursuant to Cal. Pen. Code § 637.2, Plaintiff and Class Members are entitled to the following relief:

49.     A declaration that Defendants' conduct violates CIPA;

50.     Statutory damages and/or trebled actual damages;

51.     Injunctive relief in the form of, *inter alia*, an order enjoining Defendants from collecting and transmitting data of Class Members to third parties in violation of CIPA;

52.     Injunctive relief in the form of, *inter alia*, an order requiring Defendants to destroy all data created or otherwise obtained from Class Members; and

53.     An award of attorneys' fees and costs of litigation as provided by CIPA, the private attorney general doctrine existing at common law and also codified at California Civil Code Section 1021.5, and all other applicable laws.

**COUNT II**
**California Constitutional Right to Privacy**
**(On Behalf of Plaintiff and the California Class)**

54.     Plaintiff repeats and realleges all preceding paragraphs contained herein.

55.     Plaintiff and Class Members have reasonable expectations of privacy in their vehicles and movements.  Plaintiff's and Class Members' private affairs include their behavior in their vehicles as well as any other behavior that may be monitored by the surreptitious tracking employed or otherwise enabled by Defendants' tracking.

56.     Defendants intentionally intruded on and into Plaintiff's and Class Members' solitude, seclusion, right of privacy, or private affairs by intentionally collecting data from their vehicles.

57.     These intrusions are highly offensive to a reasonable person, because they disclosed sensitive and confidential location information, constituting an egregious breach of social norms.  This is evidenced by, *inter alia*, Supreme Court precedent (most recently and forcefully articulated in the *Carpenter* opinion), legislation enacted by Congress and the California legislature, rules promulgated and enforcement actions undertaken by the FTC, petitions and litigation initiated in the United States and abroad,  as well as countless studies, op-eds, and articles decrying location tracking, and Defendants' own statements.

58.     Plaintiff and Class Members were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

59.     Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiff and Class Members.

60.     As a result of Defendants' actions, Plaintiff and Class Members seek damages and punitive damages in an amount to be determined at trial.  Plaintiff and Class Members seek punitive damages because Defendants' actions—which were malicious, oppressive, and willful—were calculated to injure Plaintiff and Class Members and were made in conscious disregard of Plaintiff's and Class Members' rights.   Punitive damages are warranted to deter Defendants from engaging in future misconduct.

**COUNT III**
**Violation of California's Consumers Legal Remedies Act**
**Cal. Civ. Code § 1750, *et seq*. ("CLRA")**
**(On Behalf of Plaintiff and the California Class)**

61.     Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

62.     Defendants are each a "person," under Cal. Civ. Code § 1761(c).

63.     Plaintiff is a "consumer[]," as defined by Cal. Civ. Code § 1761(d), who purchased or leased a vehicle whose location data was collected by Defendants.

64.     Defendants' conduct, as described herein, in misrepresenting the characteristics, qualities, benefits and capabilities of the vehicles and the installed OnStar system, or omitting material information, violates the CLRA. Specifically, Defendants violated the CLRA by omitting material facts and failing to disclose their data collection and transmission practices, engaging in the following practices proscribed by Cal. Civ. Code § 1770(a) in transactions that were intended to result in, and did result in, the collection and dissemination of Plaintiff's and Class Members' location data:

- representing that the vehicles equipped with the data collection and dissemination systems have approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

- representing that the vehicles equipped with the data collection and dissemination systems are of a particular standard, quality, or grade if they are of another;

- advertising the vehicles equipped with the data collection and dissemination systems with intent not to sell them as advertised; and

- representing that the vehicles equipped with the data collection and dissemination systems have been supplied in accordance with previous representations when they have not.

65.     Defendants violated the CLRA by selling and leasing vehicles that they knew collected and transmitted information to third parties via the telematics systems. Defendants omitted from Plaintiff and other Class Members the material fact that vehicles were sold with these systems that collected and disseminated vehicles' location data. This is a fact that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.

66.     Defendants knew, at the time they sold Plaintiff and Class Members their vehicles, of the material fact that the vehicles were equipped with data collection and dissemination systems. Defendants' conduct in selling these vehicles and omitting information about their data collection and dissemination systems was fraudulent, wanton, and malicious.

67.     Defendants' unfair and deceptive acts or practices were the foreseeable and actual cause of Plaintiff and other Class Members suffering actual damage on account of receiving a car that contained telematics systems that collected and transmitted data to third parties.

68.     Plaintiff and the other Class Members paid for a car that was supposed to meet certain specifications. When they received a vehicle that did not conform to these

specifications, and which fell below the standards set by and described in Defendants' representations, Plaintiff and the other Class Members were damaged on account of having their privacy invaded; their location data collected and transmitted to third parties; and paid more than they would have for their vehicles had they know that the vehicles are equipped with systems that collect and disseminate their location data. Plaintiff and the other Class Members suffered diminution in the value of their data and vehicles, and other damages recoverable under the law.

69.     Pursuant to § 1782 of the CLRA, Plaintiff notified Defendants in writing by mail of the particular violations of § 1770 of the CLRA and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to so act. Plaintiff Thongsawang sent her notice letter on March 29, 2024.

70.     If Defendants fail to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant § 1782 of the Act, Plaintiff will amend this Complaint to add claims for actual, punitive, and statutory damages, as appropriate.

71.     Pursuant to § 1780(d) of the Act, attached hereto as **Exhibit A** is the affidavit showing that this action has been commenced in the proper forum.

**COUNT IV**
**Violation of California's Unfair Competition Law**
**California Business & Professions Code § 17200, *et seq*. ("UCL")**
**(On Behalf of Plaintiff and the California Class)**

72.     Plaintiff realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

73.     The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising. In the course of conducting business, Defendants committed "unlawful" business practices by, among other things, making the representations and omissions of material facts, as set forth more fully herein, and violating

Civil Code §§ 1572, 1573, 1709, 1711, 1770(a)(5), (6), (7), (9), and (16), and Business & Professions Code §§ 17200, et seq., 17500, *et seq.*, and the common law.

74.     In the course of conducting business, Defendants committed "unfair" business practices by, among other things, misrepresenting and omitting material facts regarding the characteristics, capabilities, and benefits of the vehicles and the telematics systems they were equipped with. There is no societal benefit from such false and misleading representations and omissions, only harm. While Plaintiff and other Class Members were harmed by this conduct, Defendants were unjustly enriched. As a result, Defendants' conduct is "unfair" as it has offended an established public policy. Further, Defendants engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

75.     Defendants knew when vehicles were first sold and leased that they were equipped with telematics systems that collected and transmitted information concerning drivers and passengers to third parties.

76.     Plaintiff alleges violations of consumer protection, unfair competition, and truth in advertising laws in California, resulting in harm to consumers. Defendants' acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers. This conduct constitutes violations of the UCL's "unfair" prong. There were reasonably available alternatives to further Defendants' legitimate business interests other than the conduct described herein.

77.     The UCL also prohibits any "fraudulent business act or practice." In the course of conducting business, Defendants committed "fraudulent business act[s] or practices" by, among other things, prominently making the representations (which also constitute advertising within the meaning of Business & Professions Code § 17200) and omissions of material facts regarding the characteristics of the vehicles, the telematics systems they were equipped with, and their data collection and dissemination activities.

78.     Defendants' actions, claims, omissions, and misleading statements, as more fully set forth above, were also false, misleading, and likely to deceive the consuming public within the meaning of the UCL.

79.     Plaintiff and California Class Members were deceived as a result of their reliance on Defendants' material representations and omissions, which are described above. Plaintiff and other California Class members suffered injury in fact and lost money as a result of purchasing a deceptively advertised vehicle by having their privacy invaded; their location data collected and transmitted to third parties; paying more than they would have for their vehicles had they know that the vehicles are equipped with systems that collect and disseminate their location data; and incurring other consequential inconvenience, aggravation, damages, and loss of money and time.

80.     Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

81.     Plaintiff, on behalf of herself and all others similarly situated, seeks restitution from Defendants of all money obtained from Plaintiff and the other members of the Class collected as a result of unfair competition, an injunction prohibiting Defendants from continuing such practices, corrective advertising, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

**COUNT V**
**Intrusion Upon Seclusion**
**(On Behalf of Plaintiff and the Nationwide Class)**

82.     Plaintiff repeats and realleges all preceding paragraphs contained herein.

83.     Plaintiff and Class Members have reasonable expectations of privacy in their vehicles and with their movements, generally.  Plaintiff's and Class Members' private affairs include their locations.

84.     The reasonableness of such expectations of privacy is supported by Defendants' unique position to monitor Plaintiff's and Class Members' behavior through

their access to Plaintiff's and Class Members' vehicles. It is further supported by the surreptitious and non-intuitive nature of Defendants' tracking practices.

85. Defendants intentionally intruded on and into Plaintiff's and Class Members' solitude, seclusion, or private affairs by intentionally collecting and transmitting information via the systems in their vehicles.

86. These intrusions are highly offensive to a reasonable person.

87. Plaintiff and Class Members were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

88. Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiff and Class Members.

89. As a result of Defendants' actions, Plaintiff and Class Members seek damages and punitive damages in an amount to be determined at trial. Plaintiff and Class Members seek punitive damages because Defendants' actions—which were malicious, oppressive, and willful—were calculated to injure Plaintiff and Class Members and were made in conscious disregard of Plaintiff's and Class Members' rights. Punitive damages are warranted to deter Defendants from engaging in future misconduct.

### COUNT VI
### Unjust Enrichment (Quasi-Contract Claim for Restitution
### and Disgorgement) or, Alternatively, Breach of Contract
### (On Behalf of Plaintiff and the Nationwide Class)

90. Plaintiff repeats and realleges all preceding paragraphs contained herein.

91. Plaintiff and Class Members unwittingly conferred a benefit upon Defendants.

92. Defendants took and retained valuable personal location information belonging to Plaintiff and Class Members when they intentionally and comprehensively tracked their vehicle locations and driving behaviors without their consent.

93. Defendants were enriched when it utilized Plaintiff's and Class Members' location information, gathered without consent, for its own financial advantage to sell in

its raw form, or use to create reports or other analyses for sale, including, but not limited to, reports of Plaintiff's and Class Members' driving behaviors for automobile insurers.

94.     In exchange for Plaintiff's and Class Members' loss of privacy and the financial benefits Defendants enjoyed as a result thereof, including, but not limited to, profits from the sale of the location data, and reports based on that location data, Plaintiff and Class Members received nothing.

95.     It would be inequitable for Defendants to retain the benefits they have unjustly received. Therefore, as a result of Defendants' actions, Plaintiff and Class Members seek an order that Defendants disgorge the profits and other benefits they have unjustly obtained.

96.     Alternatively, to the extent Defendants successfully assert that any terms of service form a binding contract that sufficiently defines the parties' rights regarding Defendants' use of Plaintiff's and Class Members' location information, thereby rendering a claim for unjust enrichment unavailable (which Plaintiff denies in the first instance), then Plaintiff alleges that Defendants' conduct constitutes a breach of any such binding contract, including, but not limited to, the covenant of good faith and fair dealing implied into every contract. Defendants did not adequately disclose prior to collecting or selling Plaintiff's and Class Members' vehicle location data that it would or could be sold to automobile insurance companies with whom Plaintiff and Class Members had an ongoing, or prospective relationship. By virtue of Defendants' conduct as alleged herein, including the sale of Plaintiff's and Class Members' location information without adequate disclosure beforehand, Defendants breached the covenant of good faith and fair dealing implied into every contract, including any applicable terms of service.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter judgment in her favor and against Defendants as follows:

A.  Certifying the Class under Federal Rule of Civil Procedure 23 as requested herein;

B.  Appointing Plaintiff as Class Representative and undersigned counsel as Class Counsel;

C.  Finding that Defendants engaged in the unlawful conduct as alleged herein;

D.  Awarding Plaintiff and the other Class Members actual, compensatory, and consequential damages;

E.  Awarding Plaintiff and the other Class Members statutory damages;

F.  Awarding Plaintiff and the other Class Members declaratory and injunctive relief;

G.  Awarding Plaintiff and the other Class Members restitution and disgorgement;

H.  Awarding Plaintiff and the other Class Members exemplary damages, should the finder of fact determine that Defendants acted with malice or oppression;

I.  Awarding Plaintiff and the other Class Members pre-judgment and post-judgment interest on all amounts awarded;

J.  Awarding Plaintiff and the other Class Members reasonable attorneys' fees, costs, and expenses; and

K.  Granting such other relief as the Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiff, individually and on behalf of all others similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on all claims so triable.


Dated:  March 29, 2024                    Respectfully submitted,


                                          */s/ Tina Wolfson*
                                          TINA WOLFSON (SBN 174806)
                                          twolfson@ahdootwolfson.com
                                          ROBERT R. AHDOOT (SBN 172098)
                                          rahdoot@ahdootwolfson.com
                                          THEODORE MAYA (SBN 223242)
                                          tmaya@ahdootwolfson.com

CHRISTOPHER STINER (SBN 276033)
cstiner@ahdootwolfson.com
DEBORAH DE VILLA (SBN 312564)
ddevilla@ahdootwolfson.com
**AHDOOT & WOLFSON, P.C.**
2600 W. Olive Avenue, Suite 500
Burbank, California 91505-4521
Telephone: (310) 474-9111
Facsimile:  (310) 474-8585

*Attorneys for Plaintiff and the Proposed Classes*

CLASS ACTION COMPLAINT