Robert R. Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore Maya (SBN 223242)
tmaya@ahdootwolfson.com
**AHDOOT & WOLFSON, P.C.**
2600 W. Olive Avenue, Suite 500
Burbank, California 91505-4521
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

*Attorneys for Plaintiffs and the Putative Classes*

[Additional counsel appear on signature page.]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JARIYA THONGSAWANG, SUSAN CLINGERMAN, and BRENT RISH, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GENERAL MOTORS LLC, ONSTAR, LLC, and LEXISNEXIS RISK SOLUTIONS INC., <br><br> Defendants. | Case No.: 8:24-cv-00695-AB-DFM <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> 1. Violations of CIPA, Cal. Pen. Code §§ 630, *et seq.* <br> 2. California Constitutional Right to Privacy <br> 3. Violation of California's Consumers Legal Remedies Act Cal. Civ. Code § 1750, *et seq.* <br> 4. Violation of California's Unfair Competition Law California Business & Professions Code § 17200, *et seq.* <br> 5. Michigan Consumer Protection Act §§ 445.903 *et seq.* <br> 6. Massachusetts General Law Sec. 93A <br> 7. Intrusion Upon Seclusion <br> 8. Unjust Enrichment <br> 9. Violation of Fair Credit Reporting Act <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Jariya Thongsawang, Susan Clingerman, and Brent Rish (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, upon personal knowledge of facts pertaining to them and on information and belief as to all other matters, by and through undersigned counsel, hereby bring this First Amended Class Action Complaint against Defendants General Motors LLC ("GM"), OnStar, LLC ("OnStar"), and LexisNexis Risk Solutions Inc. ("LexisNexis" and, collectively with GM and OnStar, "Defendants").

## NATURE OF THE ACTION

1.      Plaintiffs bring this action on behalf of themselves and on behalf of all similarly situated persons ("Class Members") in the United States who purchased or leased a vehicle from GM and had their location data provided to LexisNexis.

2.      This action is brought to remedy violations of law in connection with Defendants' unlawful collection and dissemination of Plaintiffs' and Class Members' location data through the telematics system in their vehicles. The allegations herein are based on personal knowledge as to Plaintiffs' own experiences and are made as to other matters based on an investigation by counsel, including analysis of publicly available information.

## JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d), because this matter was brought as a class action under Fed. R. Civ. P. 23, at least one proposed Class Member is of diverse citizenship from Defendants, the proposed Class includes more than 100 members, and the aggregate amount in controversy exceeds five million dollars ($5,000,000), excluding interest and costs.

4.      The Court also has federal question jurisdiction over Plaintiffs' claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*

5.      The Court has personal jurisdiction over Defendants and venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred within this District. Plaintiff Thongsawang resides in this

FIRST AMENDED COMPLAINT

District and purchased her vehicle in this District. Defendant GM has marketed, advertised, sold, and leased vehicles within this District. Plaintiffs are informed and believe that Defendants OnStar and LexisNexis marketed, advertised, and sold their services within this District.

## **PARTIES**

6.     **Plaintiff Jariya Thongsawang** resides in Laguna Hills, California. On or about January 5, 2021, Plaintiff Thongsawang purchased a 2021 Chevy Traverse from Simpson Chevrolet of Garden Grove. At the time of purchase, she signed up for the complimentary OnStar service. At no time was she appropriately alerted to the fact that GM would collect and share her location data through the OnStar service.

7.     Plaintiff Thongsawang is informed and believes that her data, including location data, was provided to third parties, including, but not limited to, her auto insurance provider. This has led Plaintiff Thongsawang to pay more than she otherwise would have for her auto insurance.

8.     **Plaintiff Susan Clingerman** resides in Mason, Michigan. In 2019, Plaintiff Clingerman purchased a 2018 Chevy Trax from Feldman Chevrolet in Lansing, Michigan. At the time of purchase, she signed up for the complimentary OnStar service. At no time was she appropriately alerted to the fact that GM would collect and share her location data through the OnStar service.

9.     Plaintiff Clingerman was denied a credit card and learned, through that process, that Defendant LexisNexis had obtained and was disseminating her driving data. She therefore is informed and believes that her data, including hundreds of pages of location data, was provided to third parties, including, but not limited to, her auto insurance provider as well as to financial institutions. This has led Plaintiff Clingerman to pay more than she otherwise would have for her auto insurance.

10.     **Plaintiff Brent Rish** resides in Hubbardston, Massachusetts. Plaintiff Rish purchased a New 2021 GMC Sierra from an authorized GM dealership in Leominster, Massachusetts. The vehicle was connected to the GM mobile app. At no time was he

FIRST AMENDED COMPLAINT

appropriately alerted to the fact that GM would collect and share his location data through the OnStar service.

11.     Plaintiff Rish is informed and believes that his data, including location data, was provided to third parties, including, but not limited to, his auto insurance provider. This has led Plaintiff Rish to pay more than he otherwise would have for his auto insurance.

12.     **Defendant General Motors LLC** ("GM") is a United States public corporation headquartered in Detroit, Michigan, and incorporated under the laws of Delaware. GM is a multinational automotive manufacturer most known for owning and manufacturing four automobile brands: Chevrolet, GMC, Cadillac, and Buick.

13.     **Defendant OnStar, LLC** ("OnStar") is a United States public corporation headquartered in Detroit, Michigan, and incorporated under the laws of Delaware. OnStar Corporation is a subsidiary of General Motors that provides subscription-based communications, in-vehicle security, emergency services, turn-by-turn navigation, and remote diagnostics systems throughout the United States.

14.     **Defendant LexisNexis Risk Solutions Inc.** ("LexisNexis") is a United States public corporation headquartered in Alpharetta, Georgia, and incorporated under the laws of Delaware. LexisNexis Risk Solutions is a global data and analytics company that provides data and technology services, analytics, predictive insights, and fraud prevention for a wide range of industries.

## FACTUAL BACKGROUND

### *Vehicle Owner Tracking*

15.     Automobiles hold a special place in American culture as a symbol of freedom and autonomy, a ticket to the open road. However, as explained in a guide published by the non-profit Mozilla Foundation, "[m]odern cars are surveillance-machines on wheels souped-up with sensors, radars, cameras, telematics, and apps that can detect everything we do inside -- even where and when we do it. Whether that means singing at the top of

FIRST AMENDED COMPLAINT

your lungs, engaging in hanky panky in the back seat, or driving to a domestic violence shelter, cars are an increasingly unsafe place to be yourself."[1]

16.     Regulators around the world have raised concerns about the volume of personal data collected by vehicles that increasingly gather, store, and transmit information for entertainment, performance, and safety purposes. Last year, California nonprofit Consumer Watchdog told the state's regulator that "car data is the new gold rush of the auto industry. . . . Automakers and third-party companies know where we drive, what we buy, eat, our texts. A whole consumer profile is created with this information to essentially sell you things."[2]

17.     Recently, the *New York Times* reported that car manufacturers are tracking drivers' behavior through internet-connected vehicles, and sharing it with data brokers such as LexisNexis and Verisk.[3] The *New York Times* further explained that a number of car manufacturers have started offering optional features in their connected-car apps that rate people's driving. Drivers likely do not realize that, if they turn on these features, the car companies then give information about how they drive to data brokers like LexisNexis and Verisk. These data brokers in turn create "consumer disclosure reports" on individuals, which they sell to insurance companies providing insurance to those individuals. The consumer disclosure reports show the length of trips and driving behavior, such as "hard braking," "hard accelerating" and speeding. Insurance companies can use those reports to assess the risk of a current or potential customer, and adjust rates or refuse coverage based on the findings.

---

[1] *See* https://foundation.mozilla.org/en/privacynotincluded/articles/after-researching-cars-and-privacy-heres-what-keeps-us-up-at-night/ (last accessed May 21, 2024).

[2] *See* https://www.reuters.com/business/autos-transportation/california-agency-probes-automakers-data- privacy-practices-2023-07-31/ (last accessed May 21, 2024).

[3] Kashmir Hill, *Automakers Are Sharing Consumers' Driving Behavior With Insurance Companies*, N.Y. Times (Mar. 11, 2024), available at https://www.nytimes.com/2024/03/11/technology/carmakers-driver-tracking-insurance.html.

FIRST AMENDED COMPLAINT

18.     For example, GM offers OnStar Smart Driver for its Chevrolet, Buick, GMC, and Cadillac brand vehicles. Kia, Mitsubishi, Hyundai, and both Honda and its Acura luxury arm, all offer similar driver coaching systems as well. All of these programs collect information about a driver's mileage, speed, braking, and acceleration, which are then shared with LexisNexis or Verisk.

19.     The *New York Times* highlighted the case of Kenn Dahl, the driver of a leased Chevrolet Bolt, who learned that he and his wife's driving habits were being tracked when an insurance agent told him in 2022 that his LexisNexis report was a factor behind his insurance premium jumping by 21%. While many automakers and data brokers claim that they do not collect information without vehicle owner's consent, the manner in which consent is obtained is often suspect. Consumers' consent, like Kenn Dahl's, is frequently achieved by getting them to sign off on disclosures, with no specific explanation of the data collection in the fine print.

20.     Following reports, Senator Ed Markey, a Democrat from Massachusetts, sent letters to 14 automakers urging them to implement stronger privacy policies for consumers. Last month, dissatisfied by automakers' evasive answers, Sen. Markey asked the Federal Trade Commission (FTC) to investigate car manufacturers' data collection practices. Sen. Markey wrote:

> With new advances in vehicle technology and services, automakers have been vacuuming up huge amounts of data on drivers, passengers, and even individuals outside the vehicle. Based on public reporting and responses to my own inquiries into these practices, automakers face few, if any, limitations on the collection, use, and disclosure of this data. Consumers are often left in the dark. I therefore urge the FTC to investigate the automakers' data practices and take all necessary actions to protect the privacy of all road users.

21.     Sen. Markey continued to explain that in their responses, the automakers largely failed to answer important questions about whether they use the data for their own commercial benefit, whether a consumer loses functionality by refusing to consent to the data collection, and whether the manufacturers have suffered a cyberattack in recent

FIRST AMENDED COMPLAINT

months. In addition, 12 of the 14 automakers wrote that they provide data to law enforcement, with most doing so only in response to a subpoena, warrant, or other legal order.

### *General Motors Sends Location Data to LexisNexis*

22.     Through its OnStar Corporation subsidiary, GM provides subscription-based communications, in-vehicle security, emergency services, turn-by-turn navigation, and remote diagnostics mechanisms utilizing vehicles' onboard telematics system that GM markets under the "OnStar" brand.

23.     Each OnStar system installed as original equipment can gather data from both the onboard diagnostics ("OBD-II") system and built-in GPS functionality. OnStar systems also use CDMA cellular technology for voice communications and data transmissions. OnStar can transmit GPS data using the CDMA connection to the central OnStar system to provide turn-by-turn directions. It can also use the same GPS data for emergency services functionality, allowing OnStar to summon help in an accident. OnStar can also transmit data from the OBD-II system. This feature allows OnStar to track the vehicle's mileage for insurance purposes, provide vehicle health reports, and determine if there has been an accident. The OBD-II system notifies the OnStar call center when it determines that a vehicle's airbags have gone off.

24.     One service utilizing this technology is OnStar Smart Driver. This optional service provides customers with information about their driving behavior to help them maximize their vehicle's overall performance, reduce vehicle wear and tear, and encourage safer driving. GM promotes this service by offering customers who enroll in OnStar Smart Driver the ability to earn achievements, get valuable feedback with each trip, and access their driving data from their myBuick, myCadillac, myChevrolet, or myGMC mobile app(s). There is no charge for customers to enroll in OnStar Smart Driver; it comes as part of the suite of OnStar services standard on most model year 2015 and newer Chevrolet, Buick, GMC, and Cadillac vehicles.

25.     Customers can enroll in OnStar Smart Driver at the time of vehicle purchase through their dealer, or at a later date, using either their myBuick, myChevrolet, myGMC or myCadillac mobile app(s), or by visiting their vehicle brand website: https://my.buick.com,         https://my.chevrolet.com,         https://my.gmc.com,         or https://my.cadillac.com.

26.     OnStar provides a webpage of answers to frequently asked questions, including information on how they treat the consumer data that their system collects. For example, as of September 25, 2023, OnStar had posted and answered the following questions[4]:

—  **Will other OnStar Members be able to see Members' information?**

No. Members' Smart Driver information will not be visible to other OnStar members. Members will be able to see how they compare against an anonymous aggregate of participating OnStar Members.

—  **How are my scores calculated?**

After your trip is complete, we look at the factors above and apply a proprietary scoring algorithm used to assess driving behavior. The scores by trip can vary widely. For example, a longer trip with one mild hard brake would score much better than a very short trip with a more abrupt hard brake. Daily, weekly and monthly scores use the same factors, but use somewhat different scoring algorithms. Daily scores consider things that trip scores don't, like how many trips the driver took and miles he or she drove over the entire day. Trip scores may vary. Monthly scores are the most reliable indicators of how drivers are doing on their driving behaviors.

—  **How does OnStar protect Members' personally identifiable information from being shared?**

OnStar takes the security of its Members' data very seriously. We use technical, administrative and physical safeguards designed to help protect Members' information from loss, misuse and unauthorized access, disclosure, alteration, destruction or theft. OnStar doesn't share personally identifiable information with an insurance company without your express consent.

---

[4] INTERNET ARCHIVE WAYBACK MACHINE, *Help: Smart Driver* (September 25, 2023), available at: https://web.archive.org/web/20230925021817/https://www.onstar.com/support/faq/smart-driver (last accessed May 21, 2024).

27.    Nowhere in these frequently asked questions did OnStar reveal that it was providing extensive consumer data to LexisNexis, who was in turn sending it to auto insurers.

28.    LexisNexis advertises on its website that it hosts data from over 10 million vehicles, 252 billion driving miles and/or the equivalent of 19.5 million years of vehicle logging.[5] As of 2022, LexisNexis Risk Solutions had a relationship with automotive manufacturers representing more than 60% of the market and was integrated with data available for insurers.

29.    "Insurance carriers told us they believe they need to invest in telematics data now or run the risk of being left behind the competition within three to four years' time, and a significant majority of those carriers believe that a telematics exchange can deliver scalability, providing real-time data that informs on driving behavior," said Adam Hudson, vice president and general manager of U.S. Connected Car at LexisNexis Risk Solutions.[6] "This is why 42% of the U.S. auto insurance market is contracted or currently contracting to access our Exchange solutions, including 5 of the top 10 insurers. We won't stop here, as there are industry challenges to solve and a growing, evolving exchange data set can be used in a variety of telematics solutions beyond UBI, while also creating the opportunity to improve the overall vehicle ownership experience."[7]

30.    One reason insurers feel the necessity to gather telematics information is the recent increase in insurance costs. A recent analysis by the U.S. Bureau of Labor Statistics found insurance costs have risen 71% in the last decade and 18% in just the first half of last year. Higher repair costs are partly to blame. Today's cars are complex devices full of expensive electronics, often in vulnerable places. Parking sensors, blind-spot monitors, and

[5] *See* https://risk.lexisnexis.com/about-us/press-room/press-release/20220628-telematics-exchange-5-year-anniversary (last accessed May 1, 2024).

[6] *Id.*

[7] *Id.*

FIRST AMENDED COMPLAINT

automatic emergency braking systems all require sensors placed on the exterior of a car. Even a minor accident can require replacing thousands of dollars' worth of electronics.

31.    As a result of Defendants' misconduct, Plaintiffs and the other Class Members were each injured on account of their vehicle location being shared with third parties, including, but not limited to, the insurance companies that provide them insurance and/or other insurance companies where Plaintiffs and the other Class Members applied for insurance. Accordingly, the vehicles purchased by Plaintiffs and the other Class Members were fundamentally different from what they believed they were purchasing, less valuable than was represented, and less valuable than what they actually received.

32.    To date, Plaintiffs' and Class Members' data is still in the possession of Defendants and unknown third parties. As such, and without the benefit of discovery, it is for all practical purposes impossible to know at this time whether a remedy at law or in equity will provide the appropriate full relief for Plaintiff and the other Class Members. As a result, Plaintiffs, at this stage of the litigation, seek both restitution and a remedy at law, where the claims so permit. Further, Plaintiffs seek an injunction enjoining Defendants and their agents, servants, and employees, and all persons acting under, in concert with, or for them, from selling or otherwise disseminating Plaintiffs' and Class Members' data, and requiring that data's destruction.

## TOLLING OF STATUTES OF LIMITATIONS

33.    Defendants had exclusive knowledge of their activity to collect and utilize Plaintiffs' and Class Members' data and knew their activity would not be discovered by Plaintiffs and Class Members.

34.    Thus, any applicable statute of limitations has been tolled by Defendants' actions and Defendants are estopped from pleading the statute of limitations because they failed to disclose the facts they were obligated to disclose concerning their activity.

## CLASS ALLEGATIONS

35.    All Plaintiffs seek certification, under Fed. R. Civ. P. 23(a)(b)(2), and (b)(3), of the following class "Nationwide Class":

**Nationwide Class**
All persons and entities in the United States whose vehicle driving data was collected, stored, distributed, and/or sold by Defendants.

36.  In the alternative to the Nationwide Class, Plaintiff Thongsawang seeks certification of the following "California Class":

**California Class**
All persons and entities in the State of California whose vehicle driving data was collected, stored, distributed, and/or sold by Defendants.

37.  In the alternative to the Nationwide Class, Plaintiff Clingerman seeks certification of the following "Michigan Class":

**Michigan Class**
All persons and entities in the State of Michigan whose vehicle driving data was collected, stored, distributed, and/or sold by Defendants.

38.  In the alternative to the Nationwide Class, Plaintiff Rish seeks certification of the following "Massachusetts Class":

**Massachusetts Class**
All persons and entities in the State of Massachusetts whose vehicle driving data was collected, stored, distributed, and/or sold by Defendants.

39.  All Plaintiffs also seek certification of the following nationwide "FCRA Class":

**FCRA Class**
All persons and entities in the United States whose vehicle driving data was included in consumer reports created and/or disseminated by Defendant LexisNexis.

40.  The Nationwide Class, California Class, Michigan Class, Massachusetts Class, and FCRA Class are referred to collectively as the "Classes."

41.  Excluded from the Classes are: (i) Defendants and their officers and directors, agents, affiliates, subsidiaries, authorized distributors and dealers; (ii) all Class Members

FIRST AMENDED COMPLAINT

who timely and validly request exclusion from the Class(es); and (iii) the Judge presiding over this action.

42.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

43.    **Numerosity:** The members of the Class(es) are so numerous that joinder of all Class Members in a single proceeding would be impracticable. While the exact number and identities of individual members of the Class(es) are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that tens of thousands of vehicle owners have had their location data collected, stored, distributed, and/or sold by Defendants.

44.    **Existence/Predominance of Common Questions of Fact and Law:** Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. Such common questions of law or fact include, *inter alia*:

  a.    whether Defendants engaged in the conduct alleged herein;

  b.    whether Defendants omitted and misrepresented material facts to purchasers and lessees of vehicles;

  c.    whether Defendants' omissions and misrepresentations regarding the vehicles were likely to mislead a reasonable consumer;

  d.    whether Plaintiffs' and the other Class Members' vehicles were worth less than as represented as a result of the conduct alleged herein;

  e.    whether Plaintiffs and other Class Members have been damaged and, if so, the extent of such damages;

  f.    whether Defendant LexisNexis's actions constitute a violation of the FCRA; and

  g.    whether Plaintiffs and other Class Members are entitled to equitable relief, including but not limited to, restitution and injunctive relief.

45.    Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other Class Members. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action.

46.    **Typicality:** Plaintiffs' claims are typical of the claims of the other Class Members because, among other things, Plaintiffs and the other Class Members were injured through the substantially uniform misconduct described above. Like Plaintiffs, Class Members also purchased or leased a vehicle that collected, stored, distributed, and/or sold data about the vehicle to third parties. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class Members, and no defense is available to Defendants that is unique to any Plaintiff. The same events giving rise to Plaintiffs' claims for relief are identical to those giving rise to the claims of all Class Members. Plaintiffs and all Class Members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendants' wrongful conduct in collecting, storing, distributing, and/or selling their location data.

47.    **Adequacy:** Plaintiffs are adequate Class representatives because they will fairly represent the interests of the Class(es). Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including consumer fraud and privacy class action cases. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class(es) they represent and have the resources to do so. Neither Plaintiffs nor their counsel have interests adverse or antagonistic to those of the Class(es).

48.    **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other detriment suffered by Plaintiffs and the other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against

FIRST AMENDED COMPLAINT

Defendants, so it would be impracticable for Class Members to individually seek redress for Defendants' wrongful conduct. Even if Class Members could afford individual litigation, the court system should not be required to undertake such an unnecessary burden. Individualized litigation would also create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

49.   Upon information and belief, members of the Class(es) can be readily identified and notified based upon, *inter alia*, the records (including databases, e-mails, dealership records and files, etc.) Defendants maintain regarding Plaintiffs' and the Class Members' vehicles and location data.

**CAUSES OF ACTION**
**COUNT I**
**Violations of CIPA, Cal. Pen. Code §§ 630, *et seq.***
**(On Behalf of Plaintiff Thongsawang and the California Class Against
All Defendants)**

50.   Plaintiff Thongsawang repeats and realleges all preceding paragraphs contained herein.

51.   Cal. Pen. Code § 630 provides that "[t]he Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communication and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society."

52.   Defendants' acts and practices complained of herein, engaged in for purposes of storing and tracking indefinitely the location information of car owners and thus determining their movements over time (and all other inferences derivable therefrom), without their consent violated and continues to violate Cal. Pen. Code § 637.7.

53.     Cal. Pen. Code § 637.7(a) prohibits the use of an electronic tracking device to determine the location or movement of a person. As used in Cal. Pen. Code § 637.7, "electronic tracking device" means "any device attached to a vehicle or other movable thing that reveals its location or movement by the transmission of electronic signals." Cal. Pen. Code § 637.7(d).

54.     In direct violation of this prohibition, and without the consent of Plaintiff or Class Members, Defendants continued to record, store, and use the location and movement of Plaintiff's and Class Members' vehicles and provide that information to third parties.

55.     As described herein, Defendants utilized "electronic tracking devices" as defined by Cal. Pen. Code § 637.7(d), in that Defendants used "devices"—including the vehicles' own telematics systems, including, but not limited to, onboard diagnostics systems and built-in GPS functionality, which are mechanical or electronic equipment—attached to, and located within, each Class Member's vehicle (a "movable thing") to "reveal[] its location or movement by the transmission of electronic signals."

56.     Defendants unlawfully used those electronic tracking devices "to determine the location or movement of a person"—namely, Plaintiff and Class Members. Defendants engaged in such storage and tracking of each Class Member's movement after Defendants had affirmatively (but falsely) misrepresented that they would not store and track each Class Member's movement and transmit to third parties or omitted such information altogether.

57.     As a result of Defendants' violations of Cal. Pen. Code § 637.7, and pursuant to Cal. Pen. Code § 637.2, Plaintiff and Class Members are entitled to the following relief:

58.     A declaration that Defendants' conduct violates CIPA;

59.     Statutory damages and/or trebled actual damages;

60.     Injunctive relief in the form of, *inter alia*, an order enjoining Defendants from collecting and transmitting data of Class Members to third parties in violation of CIPA;

61.     Injunctive relief in the form of, *inter alia*, an order requiring Defendants to destroy all data created or otherwise obtained from Class Members; and

62.     An award of attorneys' fees and costs of litigation as provided by CIPA, the private attorney general doctrine existing at common law and also codified at California Civil Code Section 1021.5, and all other applicable laws.

**COUNT II**
**California Constitutional Right to Privacy**
**(On Behalf of Plaintiff Thongsawang and the California Class Against**
**All Defendants)**

63.     Plaintiff Thongsawang repeats and realleges all preceding paragraphs contained herein.

64.     Plaintiff and Class Members have reasonable expectations of privacy in their vehicles and movements. Plaintiff's and Class Members' private affairs include their behavior in their vehicles as well as any other behavior that may be monitored by the surreptitious tracking employed or otherwise enabled by Defendants' tracking.

65.     Defendants intentionally intruded on and into Plaintiff's and Class Members' solitude, seclusion, right of privacy, or private affairs by intentionally collecting data from their vehicles.

66.     These intrusions are highly offensive to a reasonable person, because they disclosed sensitive and confidential location information, constituting an egregious breach of social norms. This is evidenced by, *inter alia*, Supreme Court precedent (most recently and forcefully articulated in the *Carpenter* opinion), legislation enacted by Congress and the California legislature, rules promulgated and enforcement actions undertaken by the FTC, petitions and litigation initiated in the United States and abroad, as well as countless studies, op-eds, and articles decrying location tracking, and Defendants' own statements.

67.     Plaintiff and Class Members were harmed by the intrusion into their private affairs as detailed throughout this complaint.

68.     Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiff and Class Members.

69.     As a result of Defendants' actions, Plaintiff and Class Members seek damages and punitive damages in an amount to be determined at trial. Plaintiff and Class Members

seek punitive damages because Defendants' actions—which were malicious, oppressive, and willful—were calculated to injure Plaintiff and Class Members and were made in conscious disregard of Plaintiff's and Class Members' rights. Punitive damages are warranted to deter Defendants from engaging in future misconduct.

## COUNT III
### Violation of California's Consumers Legal Remedies Act
### Cal. Civ. Code § 1750, *et seq*. ("CLRA")
### (On Behalf of Plaintiff Thongsawang and the California Class Against
### All Defendants)

70.    Plaintiff Thongsawang realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

71.    Defendants are each a "person," under Cal. Civ. Code § 1761(c).

72.    Plaintiff is a "consumer[]," as defined by Cal. Civ. Code § 1761(d), who purchased or leased a vehicle whose location data was collected by Defendants.

73.    Defendants' conduct, as described herein, in misrepresenting the characteristics, qualities, benefits and capabilities of the vehicles and the installed OnStar system, or omitting material information, violates the CLRA. Specifically, Defendants violated the CLRA by omitting material facts and failing to disclose their data collection and transmission practices, engaging in the following practices proscribed by Cal. Civ. Code § 1770(a) in transactions that were intended to result in, and did result in, the collection and dissemination of Plaintiff's and Class Members' location data:

- representing that the vehicles equipped with the data collection and dissemination systems have approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

- representing that the vehicles equipped with the data collection and dissemination systems are of a particular standard, quality, or grade if they are of another;

- advertising the vehicles equipped with the data collection and dissemination systems with intent not to sell them as advertised; and

FIRST AMENDED COMPLAINT

- representing that the vehicles equipped with the data collection and dissemination systems have been supplied in accordance with previous representations when they have not.

74. Defendants violated the CLRA by selling and leasing vehicles that they knew collected and transmitted information to third parties via the telematics systems. Defendants omitted from Plaintiff and other Class Members the material fact that vehicles were sold with these systems that collected and disseminated vehicles' location data. This is a fact that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.

75. Defendants knew, at the time they sold Plaintiff and Class Members their vehicles, of the material fact that the vehicles were equipped with data collection and dissemination systems. Defendants' conduct in selling these vehicles and omitting information about their data collection and dissemination systems was fraudulent, wanton, and malicious.

76. Defendants' unfair and deceptive acts or practices were the foreseeable and actual cause of Plaintiff and other Class Members suffering actual damage on account of receiving a car that contained telematics systems that collected and transmitted data to third parties.

77. Plaintiff and the other Class Members paid for a car that was supposed to meet certain specifications. When they received a vehicle that did not conform to these specifications, and which fell below the standards set by and described in Defendants' representations, Plaintiff and the other Class Members were damaged on account of having their privacy invaded; their location data collected and transmitted to third parties; and paid more than they would have for their vehicles had they know that the vehicles are equipped with systems that collect and disseminate their location data. Plaintiff and the other Class Members suffered diminution in the value of their data and vehicles, and other damages recoverable under the law.

FIRST AMENDED COMPLAINT

78.     Pursuant to § 1782 of the CLRA, Plaintiff notified Defendants in writing by mail of the particular violations of § 1770 of the CLRA and demanded that Defendants rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendants' intent to so act. Plaintiff Thongsawang sent her notice letter on March 29, 2024.

79.     Defendants failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant § 1782 of the Act. Accordingly, Plaintiff, individually and on behalf of the California Class, seeks actual, punitive, and statutory damages, as appropriate.

80.     Pursuant to § 1780(d) of the Act, attached hereto as **Exhibit A** is the affidavit showing that this action has been commenced in the proper forum.

**COUNT IV**
**Violation of California's Unfair Competition Law**
**California Business & Professions Code § 17200, *et seq*. ("UCL")**
**(On Behalf of Plaintiff Thongsawang and the California Class Against**
**All Defendants)**

81.     Plaintiff Thongsawang realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

82.     The UCL prohibits any "unlawful," "fraudulent," or "unfair" business act or practice and any false or misleading advertising. In the course of conducting business, Defendants committed "unlawful" business practices by, among other things, making the representations and omissions of material facts, as set forth more fully herein, and violating Civil Code §§ 1572, 1573, 1709, 1711, 1770(a)(5), (6), (7), (9), and (16), and Business & Professions Code §§ 17200, et seq., 17500, *et seq*., and the common law.

83.     In the course of conducting business, Defendants committed "unfair" business practices by, among other things, misrepresenting and omitting material facts regarding the characteristics, capabilities, and benefits of the vehicles and the telematics systems they were equipped with. There is no societal benefit from such false and misleading

representations and omissions, only harm. While Plaintiff and other Class Members were harmed by this conduct, Defendants were unjustly enriched. As a result, Defendants' conduct is "unfair" as it has offended an established public policy. Further, Defendants engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

84.    Defendants knew when vehicles were first sold and leased that they were equipped with telematics systems that collected and transmitted information concerning drivers and passengers to third parties.

85.    Plaintiff alleges violations of consumer protection, unfair competition, and truth in advertising laws in California, resulting in harm to consumers. Defendants' acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers. This conduct constitutes violations of the UCL's "unfair" prong. There were reasonably available alternatives to further Defendants' legitimate business interests other than the conduct described herein.

86.    The UCL also prohibits any "fraudulent business act or practice." In the course of conducting business, Defendants committed "fraudulent business act[s] or practices" by, among other things, prominently making the representations (which also constitute advertising within the meaning of Business & Professions Code § 17200) and omissions of material facts regarding the characteristics of the vehicles, the telematics systems they were equipped with, and their data collection and dissemination activities.

87.    Defendants' actions, claims, omissions, and misleading statements, as more fully set forth above, were also false, misleading, and likely to deceive the consuming public within the meaning of the UCL.

88.    Plaintiff and California Class Members were deceived as a result of their reliance on Defendants' material representations and omissions, which are described above. Plaintiff and other California Class Members suffered injury in fact and lost money as a result of purchasing a deceptively advertised vehicle by having their privacy invaded;

their location data collected and transmitted to third parties; paying more than they would have for their vehicles had they know that the vehicles are equipped with systems that collect and disseminate their location data; and incurring other consequential inconvenience, aggravation, damages, and loss of money and time.

89.    Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

90.    Plaintiff, on behalf of herself and all others similarly situated, seeks restitution from Defendants of all money obtained from Plaintiff and the other members of the Class collected as a result of unfair competition, an injunction prohibiting Defendants from continuing such practices, corrective advertising, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

**COUNT V**
**Michigan Consumer Protection Act §§ 445.903 *et seq*.**
**(On Behalf of Plaintiff Clingerman and the Michigan Class Against All Defendants)**

91.    Plaintiff Clingerman repeats and realleges all preceding paragraphs contained herein.

92.    Plaintiff and Michigan Class Members are "persons" as defined by Mich. Comp. Laws Ann. § 445.903(d).

93.    Defendants advertised, offered, or sold goods or services in Michigan and engaged in trade or commerce directly or indirectly affecting the people of Michigan, as defined by Mich. Comp. Laws Ann. § 445.903(g).

94.    As described herein, Defendants engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, which violate Mich. Comp. Laws Ann. § 445.903(1) in the following ways:

(a) representing that their goods and services have characteristics, uses, and benefits they do not have;

(b) representing that their goods and services are of a particular standard or quality if they are of another;

(c) failing to reveal a material fact, the omission of which tends to mislead or deceive the customer, and which fact could not reasonably be known by the customer;

(d) making a representation or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is; and

(e) failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

95.    Defendants' representations and omissions were material because they were likely to deceive reasonable customers about the data collection and sharing practices alleged herein.

96.    Defendants intended to mislead Plaintiff and Michigan Class Members and induce them to rely on its misrepresentations and omissions.

97.    Plaintiff and Michigan Class Members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

98.    As a direct and proximate result of Defendants' unconscionable, unfair, and deceptive acts and practices, Plaintiff and Michigan Class Members have suffered and will continue to suffer injury and damages, as alleged herein, including, but not limited to, invasion of privacy; overpayment for auto insurance services; and decreased value of their driving telematics data.

99.    Plaintiff and Michigan Class Members seek all monetary relief allowed by law, including the greater of actual damages or $250, and any other relief that is just and proper.

**COUNT VI**
**Massachusetts General Law Section 93A**
**(On Behalf of Plaintiff Rish and the Massachusetts Class Against All Defendants)**

100.    Plaintiff Rish repeats and realleges all preceding paragraphs contained herein.

101.    The Massachusetts Regulation of Business Practice and Consumer Protection Act prohibits unfair and deceptive acts or practices in the conduct of trade or commerce. Mass. Gen. L. ch. 93A, § 2(a).

102.    Defendants, Plaintiff, and Massachusetts Class Members are "persons" within the meaning of ch. 93A, § 1(b).

103.    Defendants engaged in "trade" or "commerce" within the meaning of ch. 93A, § 1(b).

104.    Plaintiff and other Class Members are consumers who purchased or leased a vehicle equipped with the data collection and dissemination systems for end use and not for resale.

105.    Defendants' conduct, as described above, in misrepresenting the vehicles data collection and dissemination systems, while omitting the facts that Defendants would share vehicle location data as alleged above, constitutes an unfair and deceptive practice and was likely to mislead a reasonable consumer.

106.    A reasonable consumer would consider the facts that Defendants would share vehicle location data as alleged above, to be important when making a decision whether to purchase or lease a vehicle. The disclosure of Defendants' vehicle location data sharing practice would have influenced prospective buyers not to enter into transactions.

107.    Defendants knew before the time of sale to Plaintiff and the other Massachusetts Class Members, or earlier, that they would engage in this scheme of vehicle location data sharing scheme.

108.    Defendants' conduct constituted unfair conduct within the meaning of ch. 93A, § 2.

109.    Defendants' practices offend public policy, are immoral, unethical, oppressive, and unscrupulous, cause substantial injury to consumers, and pose a risk to public safety.

110.    Defendants' conduct, as alleged herein, is in violation of at least the following regulations promulgated by the Massachusetts Attorney General under ch. 93A:

(a) 940 C.M.R. § 3.02 (prohibiting, among other things, statements or illustrations used in advertisements which create a false impression of the grade, quality, value, or usability of the product offered);

(b) 940 C.M.R. § 3.05(1) (prohibiting claims or representations "made by any means concerning a product which, directly, or by implication, or by failure to adequately disclose additional relevant information, has the capacity or tendency or effect of deceiving buyers or prospective buyers in any material respect");

(c) 940 C.M.R. § 3.08(2) (providing that it "shall be an unfair and deceptive act or practice to fail to perform or fulfill any promises or obligation arising under a warranty"); and

(d) 940 C.M.R. § 3.16(2) (providing that it is a violation of ch. 93A, § 2 to "fail to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer to enter into the transaction").

111.   As a direct and proximate result of Defendants' unfair and deceptive conduct, as alleged herein, Plaintiff and the other Massachusetts Class Members have suffered injury-in-fact, including the following:

(a) Plaintiff and the other Massachusetts Class Members, in purchasing or leasing the vehicles, received cars worth less than as represented in that they paid for a car whose location data would not be shared with third parties, but did not receive that which they paid for;

(b) Plaintiff and the other Massachusetts Class Members suffered diminution in value of the vehicles due to the location data tracking and dissemination by their Vehicles; and

(c) Plaintiff's and the other Massachusetts Class Members' data was distributed to unknown third parties who took action based on that data, including, but not limited to, auto insurers who based rate increases in whole or in part on the vehicle location data.

FIRST AMENDED COMPLAINT

112.   As a result of Defendants' unfair and deceptive conduct in violation of ch. 93A, Plaintiff and the other Massachusetts Class Members have suffered actual damages, including the additional cost they paid for vehicle insurance.

113.   Had Plaintiff and the other Class Members been aware of the omitted and misrepresented facts, Plaintiff and the other Class Members would not have purchased and leased the vehicles or would have paid significantly less for them than they actually paid.

114.   182. On May 21, 2021, Plaintiff sent to Defendants written demand for relief pursuant to ch. 93A, § 9(3). This demand letter was served on Defendants on May 21, 2024. To date, Defendants failed to make a reasonable offer of relief in response to the demand.

115.   Pursuant to Mass. Gen. Law, ch. 93A, § 9, Plaintiff and the other Massachusetts Class Members seek monetary relief measured as the greater of (a) actual damages in an amount to be determined at trial; and (b) statutory damages in the amount of $25 for each violation. Because Defendants' conduct was committed willfully and knowingly, Plaintiff and the other Massachusetts Class Members are entitled to recover up to three times their actual damages, but no less than two times actual damages.

116.   Plaintiff and the other Massachusetts Class Members also seek an order enjoining Defendants from collecting and transmitting data of Massachusetts Class Members, and an order requiring Defendants to destroy all data created or otherwise obtained from Massachusetts Class Members.

## COUNT VII
### Intrusion Upon Seclusion
### (On Behalf of All Plaintiffs and the Nationwide Class Against All Defendants)

117.   Plaintiffs repeat and reallege all preceding paragraphs contained herein.

118.   Plaintiffs and Class Members have reasonable expectations of privacy in their vehicles and with their movements, generally. Plaintiffs' and Class Members' private affairs include their locations.

119.   The reasonableness of such expectations of privacy is supported by Defendants' unique position to monitor Plaintiffs' and Class Members' behavior through

their access to Plaintiffs' and Class Members' vehicles. It is further supported by the surreptitious and non-intuitive nature of Defendants' tracking practices.

120.  Defendants intentionally intruded on and into Plaintiffs' and Class Members' solitude, seclusion, or private affairs by intentionally collecting and transmitting information via the systems in their vehicles.

121.  These intrusions are highly offensive to a reasonable person.

122.  Plaintiffs and Class Members were harmed by the intrusion into their private affairs as detailed throughout this Complaint.

123.  Defendants' actions and conduct complained of herein were a substantial factor in causing the harm suffered by Plaintiffs and Class Members.

124.  As a result of Defendants' actions, Plaintiffs and Class Members seek damages and punitive damages in an amount to be determined at trial. Plaintiffs and Class Members seek punitive damages because Defendants' actions—which were malicious, oppressive, and willful—were calculated to injure Plaintiffs and Class Members and were made in conscious disregard of Plaintiffs' and Class Members' rights. Punitive damages are warranted to deter Defendants from engaging in future misconduct.

**COUNT VIII**
**Unjust Enrichment (Quasi-Contract Claim for Restitution**
**and Disgorgement) or, Alternatively, Breach of Contract**
**(On Behalf of All Plaintiffs and the Nationwide Class Against All Defendants)**

125.  Plaintiffs repeat and reallege all preceding paragraphs contained herein.

126.  Plaintiffs and Class Members unwittingly conferred a benefit upon Defendants.

127.  Defendants took and retained valuable personal location information belonging to Plaintiffs and Class Members when they intentionally and comprehensively tracked their vehicle locations and driving behaviors without their consent.

128.  Defendants were enriched when it utilized Plaintiffs' and Class Members' location information, gathered without consent, for its own financial advantage to sell in

its raw form, or use to create reports or other analyses for sale, including, but not limited to, reports of Plaintiffs' and Class Members' driving behaviors for automobile insurers.

129.   In exchange for Plaintiffs' and Class Members' loss of privacy and the financial benefits Defendants enjoyed as a result thereof, including, but not limited to, profits from the sale of the location data, and reports based on that location data, Plaintiffs and Class Members received nothing.

130.   It would be inequitable for Defendants to retain the benefits they have unjustly received. Therefore, as a result of Defendants' actions, Plaintiffs and Class Members seek an order that Defendants disgorge the profits and other benefits they have unjustly obtained.

131.   Alternatively, to the extent Defendants successfully assert that any terms of service from a binding contract that sufficiently defines the parties' rights regarding Defendants' use of Plaintiffs' and Class Members' location information, thereby rendering a claim for unjust enrichment unavailable (which Plaintiffs deny in the first instance), then Plaintiffs allege that Defendants' conduct constitutes a breach of any such binding contract, including, but not limited to, the covenant of good faith and fair dealing implied into every contract. Defendants did not adequately disclose prior to collecting or selling Plaintiffs' and Class Members' vehicle location data that it would or could be sold to automobile insurance companies with whom Plaintiffs and Class Members had an ongoing, or prospective relationship. By virtue of Defendants' conduct as alleged herein, including the sale of Plaintiffs' and Class Members' location information without adequate disclosure beforehand, Defendants breached the covenant of good faith and fair dealing implied into every contract, including any applicable terms of service.

**COUNT IX**

**Violation of the Fair Credit Reporting Act**

**(On Behalf of All Plaintiffs and the FCRA Class against Defendant LexisNexis)**

132.    Plaintiffs repeat and reallege all preceding paragraphs contained herein.

133.    Defendant LexisNexis is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f).

134.    As alleged in more detail above, Defendant LexisNexis collected Plaintiffs' driving data and incorporated into consumer reports, as defined in 15 U.S.C. § 1681a(d), which it disseminated to insurance companies and financial institutions.

135.    As a consumer reporting agency, Defendant LexisNexis is required to follow reasonable procedures "to assure maximum possible accuracy of the information concerning" individuals in consumer reports that it disseminates. 15 U.S.C. § 1681e(b).

136.    Defendant LexisNexis failed to maintain procedures to maintain maximum possible accuracy regarding Plaintiffs and FCRA Class Members' driving data.

137.    Upon information and belief, the uncontextualized, misleading, and personal driving information in the consumer reports disseminated by Defendant LexisNexis harmed Plaintiffs, including by significantly raising their insurance premiums and/or resulting in the denial of coverage.

138.    With certain exceptions not applicable here, under 15 U.S.C. § 1681b, Defendant LexisNexis "may furnish a consumer report relating to any consumer . . . in connection with any credit or insurance transaction that is not initiated by the consumer only if . . . the consumer authorizes the agency to provide such reports to such person."

139.    Plaintiffs and FCRA Class Members did not authorize Defendant LexisNexis to include driving data in consumer reports about them.

140.    As a result of each and every willful violation of the FCRA, Plaintiffs are entitled to actual damages as the Court may allow under 15 U.S.C. § 1681n(a)(1); statutory damages under 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow under 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs under 15 U.S.C. § 1681n(a)(3).

141.   As a result of each and every negligent violation of the FCRA, Plaintiffs are entitled to actual damages as the Court may allow under 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs under 15 U.S.C. § 1681o(a)(2).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A.    Certifying the Class under Federal Rule of Civil Procedure 23 as requested herein;

B.    Appointing Plaintiffs as Class Representatives and undersigned counsel as Class Counsel;

C.    Finding that Defendants engaged in the unlawful conduct as alleged herein;

D.    Awarding Plaintiffs and the other Class Members actual, compensatory, and consequential damages;

E.    Awarding Plaintiffs and the other Class Members statutory damages;

F.    Awarding Plaintiffs and the other Class Members declaratory and injunctive relief;

G.    Awarding Plaintiffs and the other Class Members restitution and disgorgement;

H.    Awarding Plaintiffs and the other Class Members exemplary damages, should the finder of fact determine that Defendants acted with malice or oppression;

I.    Awarding Plaintiffs and the other Class Members pre-judgment and post-judgment interest on all amounts awarded;

J.    Awarding Plaintiffs and the other Class Members reasonable attorneys' fees, costs, and expenses; and

K.    Granting such other relief as the Court deems just and appropriate.

1

## JURY TRIAL DEMAND

Plaintiffs, individually and on behalf of all others similarly situated, hereby request a jury trial, pursuant to Federal Rule of Civil Procedure 38, on all claims so triable.

Dated: May 21, 2024                Respectfully submitted,


                                   */s/ Tina Wolfson*
                                   Tina Wolfson (SBN 174806)
                                   twolfson@ahdootwolfson.com
                                   Robert R. Ahdoot (SBN 172098)
                                   rahdoot@ahdootwolfson.com
                                   Theodore Maya (SBN 223242)
                                   tmaya@ahdootwolfson.com
                                   Christopher Stiner (SBN 276033)
                                   cstiner@ahdootwolfson.com
                                   Deborah De Villa (SBN 312564)
                                   ddevilla@ahdootwolfson.com
                                   **AHDOOT & WOLFSON, P.C.**
                                   2600 W. Olive Avenue, Suite 500
                                   Burbank, California 91505-4521
                                   Telephone: (310) 474-9111
                                   Facsimile: (310) 474-8585

                                   *Attorneys for Plaintiffs and the Putative Classes*